USDC-SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC#:
DATE FILED: 03/31/22

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

JORDACHE ENTERPRISES, INC., *et al.*,

                Plaintiffs,

v.

AFFILIATED FM INSURANCE COMPANY,

                Defendant.

No. 21-CV-5433 (RA)

OPINION & ORDER

---

RONNIE ABRAMS, United States District Judge:

      Jordache Enterprises, Inc. and its affiliated and subsidiary entities (collectively, "Plaintiffs") filed the instant action against Affiliated FM Insurance Company ("Affiliated FM"), alleging that it breached Plaintiffs' "All Risk Policy" (the "Policy") by denying coverage for losses Plaintiffs incurred as a result of the COVID-19 pandemic. Defendant has moved to dismiss the Complaint, contending that it properly denied coverage because COVID-19 did not cause a "physical loss or damage" required to trigger the Policy's general business interruption provisions, and because Plaintiffs have not identified the "actual not suspected presence" of the virus at any of their locations, as is required for coverage under the Policy's limited communicable disease extensions. For the reasons that follow, Defendant's motion is granted, although Plaintiffs are granted leave to amend with respect to their theory of breach based on the communicable disease extensions.

# BACKGROUND[1]

Jordache Enterprises is a "designer, manufacturer, and purveyor of a wide variety of denim, apparel and accessories, most notably including premium jeans." Compl. ¶ 1. On April 27, 2019, Jordache purchased an insurance policy from Defendant that provided coverage for itself and the other named Plaintiffs for the next year. Compl. ¶¶ 4, 154-57; Dkt 23-2, Mallin Aff., Ex. B.

The named Plaintiffs are primarily "engaged in the retail or outlet sale of goods," Compl. ¶ 166, though several Plaintiffs operate hotels and wholesale businesses, Compl. ¶¶ 175-76. Beginning in mid-March 2020, Plaintiffs began to sustain losses in connection with the COVID-19 pandemic. Compl. ¶ 164. The retail and hotel locations experienced reduced sales and many locations were required to close altogether due to civil authority orders. Compl. ¶¶ 149, 165, 175. The wholesale Plaintiffs experienced losses due to the pandemic's effect on the retail businesses they supplied. Compl. ¶ 176. Several Plaintiffs also sustained losses due to tenants who were unable to pay rent during the pandemic. Compl. ¶¶ 169-72.

Plaintiffs contend that these losses are covered by their Policy with Defendant Affiliated FM, and, on June 8, 2020, they submitted a claim in connection with those losses. Compl. ¶ 179. Affiliated FM denied the majority of Plaintiffs' claim on the basis that there was "no actual presence of the disease at Plaintiffs' premises," and Plaintiffs did not suffer any "physical loss or

---

[1] The following facts are drawn from Plaintiffs' Complaint, Dkt. 1, Ex. A ("Compl."), which the Court assumes to be true for the purpose of resolving this motion, *see Stadnick v. Vivint Solar, Inc.*, 861 F.3d 31, 35 (2d Cir. 2017). The Court will also consider the Policy in deciding the motion to dismiss. "A complaint is deemed to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference." *Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 230 (2d Cir. 2016). Plaintiffs did not attach a copy of the Policy to the Complaint, but they did attach a copy to their opposition to the motion to dismiss. Given that Plaintiffs relied on the terms of the Policy and quoted from it extensively in the Complaint, the Court may consider it in deciding this motion. *Hertz Glob. Holdings, Inc. v. Nat'l Union Fire Ins. Co. of Pittsburgh*, 530 F. Supp. 3d 447, 451 (S.D.N.Y. 2021) (citing *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002)); *see also Pastor v. Woodmere Fire Dist.*, No. 16-CV-892 (ADS) (ARL), 2016 WL 6603189, at *4 (E.D.N.Y. Nov. 7, 2016) ("[C]ourts within this Circuit routinely consider copies of relevant policy documents in connection with insurance disputes.") (collecting cases).

damage." Compl. ¶¶ 182-84. Plaintiffs now contend that Defendant's denial of their claim constituted a breach of the Policy, and Plaintiffs are owed $51,580,820. Compl. ¶¶ 188-91.

The Policy provided that Affiliated FM would insure against "ALL RISKS OF PHYSICAL LOSS OR DAMAGE, except as hereinafter excluded." Dkt. 23-2, Policy at 1 (capitalization in original); *see* Compl. ¶¶ 155, 158.[2] In addition to covering physical damage at the "described locations," the Policy contained coverage for "Business Interruption." This coverage allowed for recovery of lost profits and income, among other things, and applied to losses incurred by Plaintiffs that were "a direct result of physical loss or damage of the type insured." Compl. ¶ 159; Policy at 19. Plaintiffs allege that the "various civil authority orders," *see* Compl. ¶¶ 163-67, 174-76, and the actual presence of COVID-19 at the insured properties, *see* Compl. ¶¶ 133, 140-41, 174-76, satisfy this requirement.

The Business Interruption coverage, in turn, was subject to a number of general exclusions, two of which are relevant to the instant dispute: the "Contamination Exclusion" and the "Loss of Use Exclusion." These exclusions precluded recovery of costs "due to contamination including the inability to use or occupy property or any cost of making property safe or suitable for use or occupancy," Policy at 5, as well as costs based solely on "loss of market or loss of use," Policy at 4.

The Business Interruption coverage and the Policy's exclusions were further subject to several relevant extensions of coverage. Plaintiffs' Complaint quotes large portions of the "Business Interruption Coverage Extensions" section as potentially relevant to their claim—including extensions titled "Attraction Property," "Civil or Military Authority," "Ingress/Egress,"

---

[2] Unless otherwise noted, citations to page numbers of the Policy correspond to the page numbers of the All Risk Coverage Policy Form.

3

and "Supply Chain." *See* Compl. ¶ 160; Policy at 24-31. Like the Business Interruption coverage generally, each of these extensions required a "physical loss or damage" to trigger coverage. *Id.*

Two of the Policy's relevant extensions, however, did not require a "physical loss or damage." Those extensions applied where damage resulted from the "actual not suspected presence" of a communicable disease at the insured locations. Policy at 7, 25. Both the "Communicable Disease – Property Damage" and "Communicable Disease – Business Interruption" extensions (together, the "Communicable Disease extensions"), covered losses where "a described location owned, leased or rented by the Insured has the actual not suspected presence of communicable disease" and a governmental agency or officer of the insured limited or denied access to the location. Policy at 7, 25. Defendant does not dispute, at this stage, that these provisions "are potentially applicable," but instead contends that Plaintiffs have failed to allege the "actual not suspected presence" of COVID-19 at a covered location, or that "access to the covered locations was limited, restricted, or prohibited by" an order of a governmental agency. *See* Def.'s Mem. at 2 n.4, 8.

## LEGAL STANDARD

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).[3] In assessing a complaint, the Court must accept "all factual allegations as true, but giv[e] no effect to legal conclusions couched as factual allegations." *Stadnick v. Vivint Solar, Inc.*, 861 F.3d 31, 35 (2d Cir. 2017) (internal quotation omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556

---

[3] Unless otherwise indicated, case quotations omit all internal citations, quotations, footnotes, and alterations.

4

U.S. 662, 678 (2009).[4] Moreover, the "factual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

While the Court accepts all factual allegations as true and draws all inferences in Plaintiffs' favor at the pleading stage, "the initial interpretation of a contract is a matter of law for the court to decide." *See K. Bell & Assocs., Inc. v. Lloyd's Underwriters,* 97 F.3d 632, 637 (2d Cir. 1996). Insurance policies, like the one at issue here, are "subject to principles of contract interpretation." *Universal Am. Corp. v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.*, 25 N.Y.3d 675, 680 (2015); *see also Olin Corp. v. OneBeacon Am. Ins. Co.*, 864 F.3d 130, 147 (2d Cir. 2017). The language of the policy must be construed "in light of common speech and the reasonable expectations of a businessperson," *Belt Painting Corp. v. TIG Ins. Co.*, 100 N.Y.2d 377, 383 (2003), as well as "in a way that affords a fair meaning to all of the language employed by the parties in the contract and leaves no provision without force and effect," *In re Viking Pump, Inc.*, 27 N.Y.3d 244, 257 (2016). Any ambiguities in a policy, however, must be "construed against the insurer." *Dean v. Tower Ins. Co. of New York*, 19 N.Y.3d 704, 708 (2012).

## DISCUSSION

Plaintiffs allege that the civil shutdown orders and presence of COVID-19 at the insured locations entitled them to coverage under the overarching Business Interruption provisions and the narrower Communicable Disease extensions. *See* Compl. ¶¶ 162, 174-76. In moving to dismiss the Complaint, Defendant argues that Plaintiffs are not entitled to coverage because they neither suffered any physical loss or damage, nor have they alleged the "actual not suspected presence" of

---

[4] Plaintiffs argue that "a court may only dismiss a claim under FRCP 12(b)(6) if 'it appears beyond doubt that the plaintiff[s] can prove no set of facts in support of [their] claim[s] which would entitle [them] to relief.'" Pls.' Opp. at 8 (quoting *Gregory v. Daly*, 243 F.3d 687, 691 (2d. Cir. 2001)). The Supreme Court, however, has noted that this characterization "is best forgotten as an incomplete, negative gloss on an accepted pleading standard." *Twombly*, 550 U.S. at 563.

5

COVID-19 at any of the insured locations. The Court agrees. Under New York law, neither a government shutdown nor the presence of COVID-19 constitutes "physical loss or damage." With respect to the two Communicable Disease extensions, Plaintiffs have alleged a plausible legal theory of recovery, but have failed to include sufficient factual allegations to establish the "actual not suspected presence" of COVID-19 at any insured location.

To prevail on a breach of contract claim under New York law, a plaintiff must show: "(1) the existence of a contract between itself and the defendant; (2) performance of the plaintiff's obligations under the contract; (3) breach of the contract by that defendant; and (4) damages to the plaintiff caused by the defendant's breach." *Diesel Props. S.r.l. v. Greystone Bus. Credit II LLC*, 631 F.3d 42, 52 (2d Cir. 2011).[5] Here, the only contested element is whether Defendant's denial of coverage constitutes a breach of the agreement.

I.  **The Complaint Does Not Allege Any Physical Loss or Damage**

The bulk of the coverage at issue required Plaintiffs to have suffered "physical loss or damage." Plaintiffs contend that both the civil shutdown orders and the presence of COVID-19 at their properties constituted a physical loss or damage, but neither basis is viable under New York law.

  A.  **The Civil Shutdown Orders Did Not Cause Physical Loss or Damage**

In *10012 Holdings Inc. v. Sentinel Insurance Co.*, 21 F.4th 216, 221 (2d Cir. 2021), the Second Circuit, applying New York law, held that a policy requiring "direct physical loss" or "physical damage" did not apply to loss of use due to government shutdown orders. It based this

---

[5] Jurisdiction in this case was established by diversity of citizenship, and "a federal court sitting in diversity applies the choice-of-law rules of the forum state." *Kinsey v. New York Times Co.*, 991 F.3d 171, 176 (2d Cir. 2021). Although the contract itself does not contain a choice of law provision, the parties agree that New York law controls, *see* Def.'s Mem. at 9; Pls.' Opp. at 7-8, and that agreement is sufficient to establish choice of law applying New York's choice of law rules, *see, e.g., Universal Instruments Corp. v. Micro Sys. Eng'g, Inc.*, 924 F.3d 32, 41 n.2 (2d Cir. 2019).

6

holding on *Roundabout Theatre Co., Inc. v. Cont'l Cas. Co.*, in which the First Department held that a policy requiring "direct physical loss or damage" did not provide coverage where a theater company lost access to its premises after the City closed a portion of 43rd Street for a month due to a construction accident. 302 A.D.2d 1, 6-7 (1st Dep't 2002). The Second Circuit further noted that every district and state court to have considered the issue under New York law had reached the same conclusion:

> We are unaware of any contrary authority in New York that diverges from the holding in *Roundabout Theatre*, which state and federal courts in New York have (at either the motion to dismiss stage or on summary judgment) uniformly applied since the start of the COVID-19 pandemic to deny coverage under similar insurance provisions where the insured property itself was not alleged or shown to have suffered direct physical loss or physical damage.

*10012 Holdings*, 21 F.4th at 221 (collecting cases); *see also Benny's Famous Pizza Plus Inc. v. Sec. Nat'l Ins. Co.*, 72 Misc. 3d 1209(A), slip op. at *4 (N.Y. Sup. Ct. 2021) ("All New York courts applying New York law . . . have soundly rejected the argument that business closures due to . . . New York State Executive Orders constitute physical loss or damage to property.") (collecting cases). This case presents no distinguishing facts such that a departure from the uniform application of New York law is warranted.[6]

Plaintiffs also argue that the Court should find that the phrase "physical loss or damage" is ambiguous in the context of this Policy. Pls.' Opp. at 13-15. But courts in this Circuit applying New York law have disagreed, consistently holding that where a policy requires "direct physical loss or damage," that term "unambiguously, requires some form of actual, physical damage to the insured premises to trigger loss of business income and extra expense coverage." *See, e.g., Off.*

---

[6] In briefing and at oral argument, Plaintiffs' counsel, relying on *Pepsico v. Winterthur Int'l Am. Ins. Co.*, 24 A.D.3d 743 (2d Dep't 2005), urged the Court to deviate from these cases and find that a shutdown could constitute physical loss or damage under New York law. Pls.' Opp. at 20-21; Oral Argument Tr. at 18-21. In *10012 Holdings*, however, the Second Circuit squarely addressed *Pepsico* and held that it was "completely consistent" with *Roundabout Theatre*. 21 F.4th at 221-22.

*Sol. Grp., LLC v. Nat'l Fire Ins. Co. of Hartford*, 544 F. Supp. 3d 405, 414 (S.D.N.Y. 2021) (collecting cases); *see also St. George Hotel Assocs., LLC v. Affiliated FM Ins. Co.*, No. 20-CV-05097 (DG) (RLM), 2021 WL 5999679, at *6 (E.D.N.Y. Dec. 20, 2021) (holding identical contract language was unambiguous), *appeal filed* (2d. Cir. Jan. 22, 2022). Plaintiffs have not cited, and this Court has not identified, any authority to the contrary. *See* Pls.' Opp. at 14-15. Indeed, in *Roundabout Theatre*, the First Department held that similar language "clearly and unambiguously provides coverage only where the insured's property suffers direct physical damage." *Roundabout Theatre*, 302 A.D.2d at 6. In short, the phrase "physical loss or damage," while undefined, is not ambiguous in the context of this Policy. *See Michael Cetta, Inc. v. Admiral Indem. Co.*, 506 F. Supp. 3d 168, 176 (S.D.N.Y. 2020) ("The lack of a definition of course does not render a word ambiguous.").

Accordingly, the orders prohibiting access to Plaintiffs' properties did not constitute "physical loss or damage."

### B. The COVID-19 Virus Did Not Cause Physical Loss or Damage

Plaintiffs' argument that the COVID-19 virus itself caused physical damage is equally unavailing. The Complaint does not contain factual allegations regarding the presence of COVID-19 at the insured premises, *see infra* Section II, but even if it did, the argument would still fail, as courts have routinely held that the COVID-19 virus itself does not cause physical damage. *See, e.g.*, *Northwell Health, Inc. v. Lexington Ins. Co.*, 550 F. Supp. 3d 108, 117-18 (S.D.N.Y. 2021) ("The coronavirus—unlike invisible fumes and chemicals—does not 'persist' and irreversibly alter the physical condition of a property."). The Court finds Judge Furman's analysis in *Spirit Realty Cap., Inc. v. Westport Ins. Corp.* particularly persuasive on this point. *See* No. 21-CV-2261 (JMF), 2021 WL 4926016 (S.D.N.Y. Oct. 21, 2021). *Spirit* held that COVID-19 particles, even if present

8

on the surfaces of the property, did not "penetrate" the property or render it "unhabitable," and that their presence thus did not constitute physical damage. *Id.* at *3 (collecting cases). Judge Furman also rightly observed that "the overwhelming weight of precedent, both from lower New York courts and district courts in this Circuit, holds that COVID-19 does not qualify as 'physical loss or damage.'" *Id.* (collecting cases). This line of cases was buttressed by the Second Circuit's subsequent opinion in *Kim-Chee LLC v. Philadelphia Indem. Ins. Co.*, in which the Circuit affirmed the district court's conclusion that the COVID-19 virus did not constitute "physical loss of or damage to" the property because it could not "physically alter or persistently contaminate property." No. 21-1082-CV, 2022 WL 258569, at *2 (2d Cir. Jan. 28, 2022). This Court likewise concludes that even if Plaintiffs had alleged COVID-19 particles were present at their properties, that presence would not constitute a "physical loss or damage" under the Policy.

Accordingly, Defendant's denial of coverage under the Policy's provisions requiring "physical loss or damage" did not breach the agreement.

## II. Plaintiffs Have Failed to Plead the Actual Presence of COVID-19

Defendant acknowledges that Plaintiffs may be entitled to limited coverage under either of the two Communicable Disease extensions. *See* Def. Mem. at 2 n.4, 8 ("Affiliated FM has acknowledged that the Communicable Disease coverages are potentially applicable to Plaintiffs' claim."); Reply at 2; *see also* Oral Argument Tr. at 7. For either of these extensions to apply, however, Plaintiffs must allege the "actual not suspected presence" of a communicable disease at one of the insured locations. While there is no dispute that COVID-19 is a "communicable disease" under the terms of the Policy, *see* Oral Argument Tr. at 7, the Complaint lacks any factual allegations establishing the "actual not suspected presence" of COVID-19 at an insured location.

9

As stated above, the Court must "accept all factual allegations as true, but giv[e] no effect to legal conclusions couched as factual allegations." *Stadnick*, 861 F.3d at 35. "Conclusory allegations that a defendant breached an agreement are insufficient to support a breach of contract claim." *Hadami, S.A. v. Xerox Corp.*, 272 F. Supp. 3d 587, 597 (S.D.N.Y. 2017). Nor can a plaintiff state a claim by reciting the terms of the agreement and then alleging that the defendant breached the cited language. *See id. at* 597-98; *see also Soroof Trading Dev. Co. v. GE Fuel Cell Sys., LLC*, 842 F. Supp. 2d 502, 512-13 (S.D.N.Y. 2012). "[A]llegations that merely parrot the language of the contractual provisions alleged to be breached without providing supporting facts are not presumed true." *Northwell Health*, 550 F. Supp. 3d at 115; *see also Frontline Processing Corp. v. Merrick Bank Corp.*, No. 13-CV-3956, 2014 WL 837050, at *2 (S.D.N.Y. Mar. 3, 2014) ("Conclusory allegations that a defendant breached an agreement are insufficient to support a breach of contract claim.").

Plaintiffs do not allege the presence of COVID-19 at even one of the over one hundred insured locations. Despite the general, conclusory assertion that "the spread of [the] Covid-19 virus led to significant economic damages . . . [and] damage both existed on surfaces found within these properties as well as in the breathable air circulating within these dependent properties," there is not a single allegation regarding a COVID case at any property. Compl. ¶¶ 139-43. Rather, the Complaint is filled merely with general allegations that COVID was present everywhere and caused "physical damage." *See, e.g., id.* ¶ 133 ("Accordingly, the presence of the Coronavirus in and on property, including in indoor air, on surfaces, and on objects, causes direct physical loss of or damage to property by causing physical harm to and altering property and otherwise making it incapable of being used for its intended purpose."); *id.* ¶ 141 ("Such damage both existed on

10

surfaces found within the insureds' premises and surrounding premises, as well as in the breathable air circulating within the insureds' premises.").

In response to Defendant's argument that Plaintiffs have failed to plead the "actual not suspected presence" of COVID-19, Plaintiffs cite to paragraphs 162 and 175 of the Complaint, which read:

> 162. No exclusion in the Subject Policy applies to preclude coverage for the actual presence of Covid-19 at or away from Plaintiffs' property, the physical loss and damage to the property or the business interruption losses that have and will continue to result from the physical loss and damage to the property.
> …
> 175. For the retail plaintiffs, which were not considered essential businesses, this included closures both as a result of the physical presence of the disease in their premises and as a result of civil orders requiring shutdowns. The hotel plaintiffs suffered similar losses, including both the physical presence of the disease and civil orders requiring shutdowns.

Compl. ¶¶ 162, 175; *see* Opp. at 6. Rather than providing factual support for the conclusion that COVID was present at any of the covered locations, these paragraphs, like the allegations elsewhere in the Complaint, merely "parrot the language of the contractual provisions alleged to be breached," and are thus insufficient to state a claim. *Northwell Health*, 550 F. Supp. 3d at 115.

Courts in this District evaluating similar policies have required more for a plaintiff to establish the actual presence of COVID-19 at the pleading stage. *Spirit* is again instructive in this regard. 2021 WL 4926016, at *5 (S.D.N.Y. Oct. 21, 2021). In that case, the plaintiff had alleged that many of its properties had "documented the confirmed presence of COVID-19," and listed seven locations where the presence of COVID-19 had been confirmed. *Id. at* *1. Spirit also argued that the damage extended beyond these locations based on reports of COVID cases at its headquarters and general averments that COVID had affected "insured properties in other states." *Id.* at *4. Judge Furman, however, held that Spirit had, "at most," adequately alleged the "actual not suspected presence" of COVID-19 at the seven named properties. *Id.* at *4. The remaining

allegations as to other locations and employees at Spirit's headquarters were "too conclusory to support its claim." *Id.*

While Defendant has acknowledged that even an allegation of the presence of COVID at one of Plaintiffs' properties would be sufficient to state a claim at this stage, *see* Oral Argument Tr. at 30, Plaintiffs have failed to allege a single reported case at any of their over one hundred insured locations.[7] They have thus failed to clear the modest bar imposed by Rule 8 in alleging that Defendant breached the Policy by denying coverage under the Communicable Disease extensions. *See Spirit Realty*, 2021 WL 4926016, at *5; *see also St. George*, 2021 WL 5999679, at *8.[8]

In sum, Plaintiffs have failed to state a claim for breach of contract, and Defendant's motion to dismiss is granted.[9]

---

[7] The sole allegation as to the actual presence of COVID-19 anywhere in the Complaint concerns three patrons of an unnamed hotel in midtown Manhattan who died of COVID-19. Compl. ¶ 146. While this hotel was within one mile of at least some covered properties—or "described locations"—this allegation is insufficient under the Communicable Disease extensions, which require the "actual, not suspected presence" of COVID-19 at the described locations. *See* Policy at 25 ("If a described location . . . has the actual not suspected presence of communicable disease . . . "); *see also Mohawk Gaming Enterprises, LLC v. Affiliated FM Ins. Co.*, 534 F. Supp. 3d 216, 221 (N.D.N.Y. 2021).

[8] Plaintiffs have attempted to remedy this pleading deficiency by filing two affidavits containing expert reports in connection with their memorandum of law in opposition to the motion to dismiss. *See* Dkts. 24-25. They argue the Court may consider these affidavits and the reports as part of the Complaint. *See* Pls.' Opp. at 11 n.4 (citing *L-7 Designs, Inc. v. Old Navy, LLC*, 647 F.3d 419, 422 (2nd Cir. 2011)). "A complaint is deemed to include any written instrument attached to it as an exhibit, materials incorporated in it by reference, and documents that, although not incorporated by reference, are 'integral' to the complaint." *L-7 Designs*, 647 F.3d at 422 (quoting *Sira v. Morton*, 380 F.3d 57, 67 (2d Cir. 2004)). The two affidavits and expert reports filed in connection with the opposition do not fit within these exceptions. First, they are not "written instruments," nor were they attached to the Complaint. *See Smith v. Hogan*, 794 F.3d 249, 254 (2d Cir. 2015) ("[Plaintiff's affidavit] bears no resemblance to . . . [a] 'written instrument.'"). Second, they cannot be said to have been incorporated by reference or be integral to the Complaint because they were not referenced in it and, indeed, post-date its filing. *See Ong v. Chipotle Mexican Grill, Inc.*, 294 F. Supp. 3d 199, 224 (S.D.N.Y. 2018); *see also Pyatt v. Raymond*, 462 F. App'x 22, 24 (2d Cir. 2012), *as amended* (Feb. 9, 2012) (holding that district court did not err by declining to examine expert reports attached to opposition to motion to dismiss). Accordingly, the Court will not consider them in deciding this motion to dismiss.

[9] In light of this ruling, the Court need not evaluate whether the exclusions cited by Defendant would also have barred coverage. *See Spirit Realty*, 2021 WL 4926016, at *5 n.7.

### III. Plaintiffs Are Granted Leave to Amend

Plaintiffs have requested leave to amend in the event the Court grants the motion to dismiss. Pls.' Opp. at 12 n.6. Rule 15 provides that "the court should freely give leave [to amend a complaint] when justice so requires." Fed. R. Civ. P. 15(a)(2). The Second Circuit has emphasized that this is a "permissive" standard, and that leave to amend should be liberally granted, consistent with the Circuit's "strong preference for resolving disputes on the merits." *Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC*, 797 F.3d 160, 190 (2d Cir. 2015). "Ordinarily, a plaintiff should be granted leave to amend at least once after having the benefit of a court's reasoning in dismissing the complaint." *Obra Pia Ltd. v. Seagrape Inv'rs LLC*, 19-CV-7840 (RA), 2021 WL 1978545, at *3 (S.D.N.Y. May 18, 2021). This is especially true in the Court's first ruling on a motion to dismiss. *Loreley*, 797 F.3d at 190. Denying leave to amend under such circumstances is "often improper." *See 421-A Tenants Ass'n, Inc. v. 125 Ct. St. LLC*, 760 F. App'x 44, 51 (2d Cir. 2019).

At oral argument, Plaintiffs' counsel represented that they had access to more data now than when the initial Complaint was filed, and that, if granted leave to amend, Plaintiffs would conduct additional investigations into COVID cases at the insured properties. Oral Argument Tr. at 26. They thus may well be able to cure the deficiencies in their Complaint. Accordingly, the Court grants Plaintiffs leave to amend the Complaint with respect to the theory of breach based on the Communicable Disease extensions, provided they have a good faith basis for doing so.

## CONCLUSION

For the reasons stated above, the motion to dismiss is granted, as is Plaintiffs' application for leave to file an amended complaint with respect to their theory of breach premised on the Communicable Disease extensions.

Plaintiffs may file any such amended complaint no later than May 2, 2022. Failure to do so will result in dismissal of this action with prejudice. Assuming Plaintiffs do file an amended complaint by that date, the Court will hold a conference to discuss the next steps in the litigation. By May 6, 2022, the parties shall submit a joint letter proposing mutually agreeable dates for the conference, as well as indicating whether they prefer the conference to be held in person or by video.

The Clerk of Court is respectfully directed to terminate the motions pending at docket entries 14, 28, and 29.

SO ORDERED.

Dated:   March 31, 2022
           New York, New York

_____
Ronnie Abrams
United States District Judge